# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| SOUTHWEST BANK OF TEXAS, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:03CV1816SNL |
| | ) | |
| M/V THE WHIPPLER, and her engines, | ) | |
| tackle, and appurtenances, etc., | ) | |
| *in rem*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff has filed this *in rem* action involving the foreclosure of its preferred ship mortgage against the defendant M/V THE WHIPPLER. Plaintiff seeks to obtain moneys due under its preferred ship mortgage and further to establish the priority of its mortgage claim over the claim(s) of Claimant My River Home Boat Harbor ("MH). This matter is before the Court on plaintiff's motion for summary judgment (#28), filed August 5, 2005. Responsive pleadings have been filed. This cause of action had been previously set on the Court's trial docket of October 31, 2005.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998)(citations omitted); see, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems,

Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d.

237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's

theory of age discrimination failed "[b]ecause this theory is supported more by contentions and

speculation than evidence, it is insufficient to withstand summary judgment.").

     Although the Court is required to view the facts in the light most favorable to the non-

moving party, it should not accept "unreasonable inferences or sheer speculation as fact.".

Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004).  A

plaintiff may not "simply point to allegations made in [her] complaint but must identify and

provide evidence of `specific facts creating a triable controversy." Howard, at 800 *quoting*

Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999).  Furthermore, a

plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort

to find support for the plaintiff's allegations.  Howard, at 800-01 (citations omitted).  The Court

is only obligated to consider "admissible evidence and disregard portions of various affidavits and

depositions that were made without personal knowledge, consist of hearsay, or purport to state

legal conclusions in fact.".  Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d.

716, 723 (8th Cir. 2003).

     There are no disputes of material facts in this cause of action.  In or around July 2000, the

Townhall Companies (Townhall) purchased the M/V THE WHIPPLER, with hull serial number

AGC71032F000 and documented as a recreational vessel, Official Number 1101447.[1]  On July 5,

2000, Townhall executed a certain promissory note for the purchase of the vessel.  The amount

---

[1]The material facts set forth in this memorandum are largely extracted from the plaintiff's
statement of uncontroverted material facts and its brief in support of the instant summary
judgment motion.  MH has stated to the Court that it does not dispute the statement of material
facts made by the plaintiff.  *See*, Claimant MRH's Opposition (#31), pg. 2.

financed was $130,000.00, plus interest.[2]  As security for the debt evidenced by the promissory note, Townhall gave a preferred mortgage of the vessel to plaintiff Southwest Bank.  The mortgage was duly recorded at the United States Coast Guard Documentation Office, National Vessel Documentation Center on August 3, 2000 in Book No. 00-86, Page 260.

Townhall made its monthly payments under the promissory note and mortgage through June 2003 but failed to make any additional payments thereafter.  Failure to make payment when due and owing is an act of default under the terms of the note.  Consequently, Southwest Bank declared due and payable the entire indebtedness under the note as secured by the mortgage.

Presently, there is due and unpaid under the note and mortgage the principal sum of $65,510.61.  There also is due and owing to Southwest Bank from Townhall the sum of $8945.85 in unpaid interest through May 31, 2005.  Interest continues to accrue at $18.35 per diem on all unpaid sums.  Furthermore, the note provides that Townhall must pay all attorneys' fees and expenses incurred by Southwest Bank as a result of Townhall's default under the terms of the note and mortgage.  Southwest Bank has incurred $35,285.82 in attorneys' fees and expenses and $6419.11 in costs through May 31, 2005.  Finally, Southwest Bank has incurred additional attorneys' fees and costs with regard to the instant matter, in an amount yet to be determined.

On April 30, 2004 MH filed a claim in this proceeding seeking to recover $30,922.47 for repairs allegedly performed on the vessel, and $1200.00 in storage fees for the vessel, for a total claim of $32,122.47.  According to documents filed by MH in connection with this claim, the repairs and storage costs were not incurred until, at the earliest, May 2003.

---

[2]Documentation supporting the plaintiff's statement of material facts are attached to the plaintiff's motion as Exhibits A-H, and attached to the plaintiff's reply brief as Exhibits A-F.

On June 25, 2004, Southwest Bank filed a motion seeking the Court's authorization to conduct a private sale of the M/V THE WHIPPLER, rather than a public auction, for the reasons stated in the motion.  *See*, Document #14.  In responding to the motion, MH stated that while it did not oppose a private auction, it had found a buyer willing to purchase the vessel for $90,000.00.  *See*, Document #15, filed June 30, 2004.[3]

On July 7, 2004 the Court entered its order authorizing the private sale of the vessel by substitute custodian Luttrell Marine.  *See*, Court Order #16.  On or about October 25, 2004 Luttrell Marine entered into a contract for sale of the vessel to David Smith for $95,000.00, subject to an inspection and water test.  The water test revealed that the vessel's starboard engine was seriously damaged and essentially inoperable.  Mr. Smith subsequently withdrew his initial offer of $95,000.00 and made a new offer of $80,000.00 to purchase the M/V THE WHIPPLER in its (then) current condition.  That sale was confirmed by this Court and, pursuant to the terms of its prior Order[4], the proceeds of the sale, $76,000.00 after payment of stipulated sales commission to Luttrell Marine, were deposited into the Court's registry.

Claimant MH does not dispute any of the above-stated material facts but instead offers two additional "material facts" in its opposition to the instant motion.  Firstly, it states that "[P]laintiff's claim for attorney's fees in the amount of $35,000.00 is unreasonable."; and secondly, "[T]he vessel in question sustained a diminution of value of $15,000.00 after custody was transferred from MH to plaintiff; and this diminution was attributable to plaintiff's conduct.".

---

[3]There is a minor immaterial dispute regarding whether or not MH conveyed a "proposal for dividing the sales proceeds" to Southwest Bank.  MH claims that it proposed a division of $65,000.00 for Southwest Bank and $25,000.00 for MH.  Southwest Bank avers that such a proposal was never conveyed to it and MRH's response does not refer to such a division of the sales proceeds.

[4]Order #16, filed July 7, 2004.

Claimant MRH's Opposition (#31), pg. 2. Neither of these statements are statements of "material fact". As for the reasonableness of the attorneys' fees sought, this is a legal conclusion to be determined by the Court. As for the "diminution of value" of the vessel, this is a statement of opinion backed only by an affidavit by John Douthit, service manager for MH. Consequently, there are no material issues of fact in dispute in this case and the Court need only apply the applicable law.

This action is governed by the Ship Mortgage Act, 46 U.S.C. §31321 *et. seq.* "The Ship Mortgage Act, when read together with the statutes delineating the judicial sale procedure in federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam*." J. Ray McDermott & Co. v. Vessel Morning Star, 457 F.2d. 815, 818 (5th Cir. 1972). The Ship Mortgage Act provides that a preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding indebtedness secured by the vessel. 46 U.S.C. §31325(a). Upon default of any term of a preferred mortgage, the mortgagee may "enforce the preferred mortgage lien in a civil action in rem" and recover the amounts due under the mortgage from the proceeds of the sale of the vessel. 46 U.S.C. §§31325(b)(1); 31326. Since Townhall defaulted under the terms of the note and mortgage by failing to make scheduled payments thereunder as they became due, Southwest Bank (as the mortgagee) is entitled to enforce its preferred mortgage lien in this civil action *in rem* for the "amount of the outstanding mortgage indebtedness secured by the vessel."

The Ship Mortgage Act provides that a prior in time preferred mortgage is entitled to priority over all subsequently arising liens against the subject vessel, excepting only certain "preferred" maritime liens as set out in the statute. 46 U.S.C. §31301. "Preferred maritime liens"

include any maritime lien "arising before [the] preferred mortgage was filed", and certain other specific categories, such as liens for crew and stevedore wages. 46 U.S.C. §31301. Since MRH's lien is for repairs and storage; i.e. a normal "maritime lien as defined by 46 U.S.C. §31342, and not one of the categories that qualifies as a "preferred maritime lien"; and did not arise prior to the preferred mortgage lien being filed, plaintiff Southwest Bank's prior-in-time preferred ship mortgage lien is entitled to priority. *See*, United States v. Trident Crusader, 366 F.3d. 391 (5th Cir. 2004); Midlantic National Bank v. Sheldon, 751 F.Supp. 26 (E.D.N.Y. 1990).

The general rule regarding priorities under the Ship Mortgage Act is that attorneys' fees, costs, and interest accrued in the enforcement of a preferred ship mortgage are entitled to the same priority as the mortgage itself. Transamerica Commercial Finance Corp. v. F/V SMILELEE, 944 F.2d. 186, 188 (4th Cir. 1991) *citing* General Elec. Credit Corp. v. O/S Triton VI, 712 F.2d. 991, 994 (5th Cir. 1983); Nova Univ. of Advanced Tech., Inc. v. M/V Gypsy, 331 F.Supp. 721, 722 (S.D.Fla. 1971). Thus, Southwest Bank's attorneys' fees, costs, and accrued interest are entitled to priority (just as its preferred ship mortgage lien) over MRH's claims for repairs and storage.

MH does not dispute the priority of these items; instead it questions the "reasonableness" of the attorneys' fees sought. Its only "evidence" in support of its assertion that the fees sought are unreasonable is the submission of the invoices received by Southwest Bank from its counsel and produced by Southwest Bank. It claims that such fees are unreasonable because this case "involves the simple arrest of a pleasure craft on land with no contested issues." MRH's Brief in Opp. (#31), pg. 3. Other than this assertion, MH offers no example in the invoices submitted of unwarranted work or duplicative work. Furthermore, it fails to submit any evidence challenging the hourly rate charged by any of the involved counsel as excessive. Finally, MH fails to provide

any evidence that the hours expended as to any task were excessive. MRH's blanket assertion that the attorneys' fees sought are unreasonable, without a scintilla of evidence in support, is not sufficient to create an issue of material fact.

Having reviewed the invoices, and the affidavits of B. Matthew Struble, Robert Kruckemeyer, Gary Mayes, and Barry Hawk, the Court finds that the attorneys' fees and costs sought are reasonable under the circumstances of this case.

Although, again, MH does not dispute the priority of Southwest Bank's preferred ship mortgage lien, it appear to argue that it is entitled to some type of "equitable relief"[5] on the basis of its prior objection to the sale of the vessel, in which it alleged that it had found a buyer willing to purchase the vessel for $90,000.00; and that any diminution in value of the M/V THE WHIMPER was due to damage incurred after Southwest Bank took possession of it. Neither of these contentions defeat the priority of Southwest Bank's preferred ship mortgage lien in total.

Firstly, MH has failed to provide any objective admissible evidence supporting its contention that Southwest Bank deliberately ignored a "bonafide offer" of $90,000.00 for the vessel. Its only "evidence" is the affidavit of Mike Dallwitz (one of the owners of MH) who contends that a "Michael Wolf of St. Louis" made an offer of $90,000.00 for the vessel and that Mr. Dallwitz "would convey his offer to my attorneys herein who would then see if plaintiff would be interested in selling the boat on Mr. Wolf's terms." Affidavit of Mike Dallwitz attached to MRH's Response to Plaintiff's Motion for Interlocutory Sale (#15), filed June 30. 2004. Mr. Dallwitz does not provide any details as to "Mr. Michael Wolf", does not contend that he did in fact convey Mr. Wolf's offer, nor does he provide any details as to when he conveyed this offer,

---

[5]The parties refer to this vague "equitable relief" as "equitable subordination"; i.e. due to some type of misconduct on the part of Southwest Bank, its preferred ship mortgage should not take priority over MRH's necessaries lien.

nor does he identify to whom he conveyed the offer. More importantly, the affidavit is inadmissible hearsay - an out of court statement made to the affiant and clearly offered for the truth of the matter asserted; i.e. that the mysterious Mr. Wolf would have paid $90,000.00 for the vessel.

As for the damage allegedly incurred after the vessel left the possession of MH, again the only "evidence" is the self-serving affidavit of John Douthit. As stated before, this affidavit is nothing more than speculation and opinion. Mr. Douthit speculates that a boat left outside on a trailer for several months during late spring and summer resulted in significant **internal** engine damage. There is nothing offered to support this contention. Furthermore, Mr. Douthit does not attest that he was present for the water test, that he viewed the vessel after the water test, or viewed that reported damage after the water test. Mere speculation is not enough to successfully challenge a well-supported summary judgment motion.

MH has failed to provide sufficient support for this Court to equitably subordinate Southwest Bank's preferred ship mortgage to MRH's lien for repairs and storage. It has failed to demonstrate misconduct on the part of Southwest Bank rising to the level of bad faith or fraud. *See*, Trident Crusader, at 395-96; Maryland National Bank v. Vessel Madam Chapel, 46 F.3d. 895, 901 (9th Cir. 1995). At best its allegations may rise to the level of negligence (on the part of Luttrell Marine); however, mere negligence cannot be the basis for inequitable conduct sufficient to support a claim for equitable subordination. *See*, Maryland National Bank, at 901.

Since there are no material issues of fact in dispute, and Southwest Bank's preferred ship mortgage is entitled to priority over MRH's necessaries lien as a matter of law, the Court will grant Southwest Bank's motion for summary judgment.

Dated this __17th__ day of October, 2005.

_Stephen N. Limbaugh_
SENIOR UNITED STATES DISTRICT JUDGE